Order Form Rev 06/2012)

# United State District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Judge James B. Zagel | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 12 C 3425 | DATE | October 19, 2012 |
| CASE TITLE | PAWLICK V. LAWSON PRODUCTS, INC. | | |

**DOCKET ENTRY TEXT:**

The motion to dismiss Count I of the amended complaint [14] is GRANTED, with prejudice. I decline to exercise supplemental jurisdiction over Count II, a state law claim between undiverse parties. Count II is therefore DISMISSED without prejudice.

**STATEMENT**

    Plaintiff Joseph L. Pawlick filed a complaint against his former employer, Lawson Products, for age discrimination and contract reformation. Count I comes under the federal Age Discrimination in Employment Act ("ADEA"), while Count II is the state law contract claim. Defendant has moved to have Count I dismissed for failure to timely file an EEOC charge or in the alternative to have certain of the supporting allegations of Count I stricken. For the following reasons, the motion is granted.
    Additionally, any exercise of the supplemental jurisdiction for the remaining state law claim would be inappropriate for a case that is so far from trial. Count II, therefore, is dismissed without prejudice.

BACKGROUND

    According to the allegations of the amended complaint (which for purposes of this motion are taken as true) Joseph Pawlick worked for Lawson products for thirty-seven years. In 2007, Pawlick entered into a contract, the purpose of which was to compensate him in exchange for his premature and involuntary retirement from the company. The lead-up to the contract was that sometime in 2006, the Chairman of Lawson Products, Robert Washlow, asked Pawlick how long he planned to continue working at the company. Pawlick told Washlow that his plan was to work for roughly six more years. Pawlick was sixty-four at the time, so the six years would take him out to the age of 70.
    Following up on this conversation early in 2007, Washlow told Pawlick that the six years was "not going to happen." Other than saying this, Washlow provided no justification for saying that Pawlick couldn't stay on for the six years. Pawlick was an excellent employee, so the only possible explanation (again, according to the complaint) was age discrimination.
    On March 15, 2007, Pawlick entered into a written agreement – the aforementioned contract – that set out the scope of his remaining employment, the terms of his compensation, and a formal retirement date. It did not provide for a release of any claims.
    Under the contract, Pawlick was to continue to work full time through the end of 2007. Then, for the period of January 1, 2008 through December 31, 2009, Pawlick was to cease working full time but be available as a consultant. December 31, 2009 was designated as the effective date of his full retirement.
    The contract provided compensation that the amended complaint summarizes as:

    (a) salary; (b) continuation of group insurance (medical, dental, vision, optional life) at the

then applicable employee rates; (c) participation in Defendant's profit-sharing plan (d) profit-sharing contributions granted by Defendant for 2008 and 2009; (e) participation in Defendant's executive deferral plan; and (f) for a period of five (5) years beginning on the "Retirement Date" under the Contract (i.e., Mr. Pawlick's termination date of December 31, 2009) or until 2014, continuation of group insurance (medical, dental, vision) at the then current employee rates.

The complaint alleges that Defendant has not honored the contract in two major ways. First, Pawlick alleges that Lawson Products did not pay out under the profit-sharing plan in either 2008 or 2009. Second, Pawlick alleges that on December 22, 2010, Lawson Products sent him a letter informing him that he could not continue to receive his health benefits at the favorable employee rate.

In response to this letter, Pawlick filed a charge of discrimination with the EEOC on September 22, 2011. The EEOC issued a Right to Sue Letter on February 22, 2012 and the filing of original complaint in this lawsuit followed on May 4, 2012.

DISCUSSION

In Illinois, an employee may sue under the ADEA only if he files a charge of discrimination with the EEOC within 300 days of the alleged unlawful employment practice. 29 U.S.C. § 626; *see also Flannery v. Recording Indus. Ass'n of Am.*, 354 F.3d 632, 637 (7th Cir. 2004) (citing *Hamilton v. Komatsu Dresser Indus.*, 964 F.2d 600, 603 (7th Cir. 1992)). In discriminatory discharge cases, two elements are necessary to establish the date on which the unlawful employment practice occurred. *Flannery*, 354 F.3d at 637. First, there must be a final, ultimate, non-tentative decision to terminate the employee. *Id.* (citing *Delaware State Coll. v. Ricks*, 449 U.S. 250, 258-59 (1980)). Second, the employer must give the employee "unequivocal" notice of its final termination decision. *Id.* (citing *Dvorak v. Mostardi Platt Assocs., Inc.*, 289 F.3d 479, 486 (7th Cir. 2002)). Both of these elements are necessary to start the limitations period; neither alone is sufficient. *Id.*

Here, I find that the alleged discriminatory discharge occurred on March 15, 2007, which is the date when the parties executed the agreement that established Pawlick's effective retirement date. On this date, both elements of the termination were present: the decision became final and Pawlick was put on notice of the termination.

Pawlick argues that this date is not the proper one for setting the 300-day countdown because, given that the contract amply compensated him, he was not "injured" at that time. The date he identifies for injury was December 22, 2010, which is the date when he received the letter from Lawson Products stating that he would not longer get the health benefits under the contract. Injury, however, is not the focus in beginning the 300-day window for timely filing. "The proper focus is upon the time of the *discriminatory acts*, not upon the time at which the *consequences* of the acts became most painful." Lucas v. Chi. Transit Auth., 367 F.3d 714, 723 (7th Cir. 2004) (quoting *Ricks*, 449 U.S. at 258) (emphasis supplied in Seventh Circuit opinion). The discriminatory act here, if at all, was forcing Pawlick out based on his age. That decision was finalized with the creation of the involuntary retirement scheme and culminated in the March 15, 2007 contract execution.

The EEOC charge filed in this case came on September 22, 2011 – obviously more than 300 days after March 15, 2007. The charge was untimely so the ADEA claim must be dismissed.

Pawlick argues in the alternative that even if December 22, 2010 is not the proper accrual date and that some other date (like March 15, 2007) is, he should receive the benefit of equitable estoppel or equitable tolling to retain his claim. Neither doctrine is applicable here.

Equitable estoppel will operate as a bar to the defense of statute of limitations if "the defendant took active steps to prevent the plaintiff from suing in time, such as by hiding evidence or promising not to plead the statute of limitations." *Lucas v. Chi. Transit Auth.*, 367 F.3d 714, 721 (7th Cir. 2004). While neither of

those is true here, Pawlick argues that Defendant created a settlement agreement with him so that he would not sue, only to dishonor that agreement once the limitations period ran. While this could be interpreted as the kind of "active steps" a defendant might take to forestall an employment discrimination suit, there is a key difference between the situation in this case and the archetypal examples described in *Lucas*. When a defendant hides evidence or promises not to plead the statute of limitations (only to renege and assert the defense), in a typical case that leaves the plaintiff with no remedy. Here, however, Pawlick may still sue under a contract theory for breaching the agreement. Indeed, that's what the second count of his complaint is about. Ultimately, Plaintiff puts forth no legal authority for the proposition that a five-year-old discriminatory discharge claim can be revived simply because a defendant breached the terms of a settlement agreement surrounding the claim. Equitable estoppel is unavailable.

Equitable tolling may extend the statute of limitations "if, despite all due diligence, a plaintiff cannot obtain the information necessary to realize that he may possibly have a claim." *Beamon v. Marshall & Ilsley Trust Co.*, 411 F.3d 854, 860 (7th Cir. Wis. 2005). Everything Pawlick needed to know about his ADEA claim he knew in 2007 – equitable tolling is not available here.

Plaintiff's claim for discriminatory discharge accrued on March 15, 2007. He did not file a charge of discrimination until December 22, 2010. No equitable doctrine applies to save the claim. Therefore, the motion to dismiss Count I is granted.

CONCLUSION

The motion to dismiss Count I of the amended complaint is GRANTED, with prejudice. I decline to exercise supplemental jurisdiction over Count II, a state law claim between undiverse parties. Count II is therefore DISMISSED without prejudice.